**CHORA YOUNG & MANASSERIAN LLP**
Paul P. Young (SBN 257571)
Joseph Chora (SBN 284700)
Armen Manasserian (SBN 288199)
Cameron H. Totten (SBN 180765)
650 Sierra Madre Villa Ave, Suite 304
Pasadena, CA 91107
Tel.: (626) 744-1838
Fax: (626) 744-3167
Email: paul@cym.law

Attorneys for Creditor Gabrielino-Tongva Tribe

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## NORTHERN DIVISION

| | |
|---|---|
| In re: | Case No. 9:21-bk-11117-DS |
| JONATHAN ALAN STEIN, | Chapter 11 |
| Debtor and Debtor-in-Possession, | **CREDITOR GABRIELINO-TONGVA TRIBE'S NOTICE OF MOTION AND MOTION TO DISMISS BANKRUPTCY CASE OR, ALTERNATIVELY, TO CONVERT TO CHAPTER 7, PURSUANT TO 11 U.S.C. § 1112** |
| | Date:       January 11, 2022<br>Time:      11:30 a.m.<br>Crtrm:     201 (via ZoomGov)<br>Place:     1415 State Street<br>              Santa Barbara, CA  93101 |

**TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE DEBORAH J. SALTZMAN, THE OFFICE OF THE UNITED STATES TRUSTEE, THE DEBTOR AND HIS COUNSEL OF RECORD, AND ALL PARTIES IN INTEREST:**

**PLEASE TAKE NOTICE** that on January 11, 2022 at 11:30 a.m., or as soon thereafter as the Court may hear the matter, in Courtroom 201 of the United States Bankruptcy Court located at 1415 State Street, Santa Barbara, California, 93101, Creditor Gabrielino-Tongva Tribe (the "Tribe") will and hereby does move the Court, pursuant to 11 U.S.C. § 1112, for an order dismissing this case with an eighteen month bar on refiling, or, alternatively, converting it to Chapter 7 (the "Motion").

The Tribe brings this Motion on the grounds that Debtor/Debtor-in-Possession Jonathan Alan Stein ("Debtor" or "Stein"): (i) filed this case (the "Bankruptcy Case") for an improper purpose; (ii) filed this Bankruptcy Case in bad faith to frustrate, delay, and hinder the Tribe's efforts to collect on its judgment; (iii) has no reasonable probability of reorganization; (iv) has dissipated substantial assets prior to commencing the Bankruptcy Case, including multiple transfers to his wife; (v) has and is using cash collateral without authority; and (vi) has failed to satisfy his reporting requirements.

The Tribe bases this Motion on this Notice, the accompanying Memorandum of Points and Authorities, the Declaration of Paul P. Young, the Request for Judicial Notice which the Tribe recently filed in support of its pending Motions for Relief from the Automatic Stay (Dkt. No. 23), the concurrently filed Request for Judicial Notice ("RJN"), all pleadings on file in this case, all other matters of which this Court may take judicial notice pursuant to Rule 201 of the Federal Rules of Evidence, and such other evidence and our argument as may be presented at or prior to the hearing on the Motion.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to Local Bankruptcy Rule ("LBR") 9013-1(f), any response or opposition to the Motion must be in writing, must otherwise comply with LBR 9013-1, and must be: (a) filed with the Clerk of the Court at 255 East Temple Street, Los Angeles, California 90012; (b) served upon counsel for the Tribe at the address located in the upper-left hand corner of the caption of this Motion; and (c) delivered as a copy to the Chambers of the Honorable Deborah J. Saltzman, United States Bankruptcy Court, Courtroom 201, 1415 State Street, Santa Barbara, California 93101, no later than fourteen (14) days prior to the hearing date set forth above.

**PLEASE TAKE FURTHER NOTICE** that the failure to respond in writing by the above referenced deadline may be deemed by the Court to be a lack of objection to the relief requested in the Motion.

Dated: December 17, 2021          **CHORA YOUNG & MANASSERIAN LLP**


By: /s/ Paul Young
Paul Young
Attorneys for Creditor
Gabrielino-Tongva Tribe

3

## TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES .................................................. 10

I.    INTRODUCTION .................................................................................................. 10

II.   STATEMENT OF FACTS ...................................................................................... 11

    A.  Overview ........................................................................................................ 11

    B.  Trial (2016-2019) .......................................................................................... 12

    C.  Misconduct During Trial ............................................................................... 12

    D.  Entry of Judgment and Liens on Real and Personal Property ...................... 14

    E.  Appeal of Judgment ...................................................................................... 14

    F.  Post-Judgment Misconduct .......................................................................... 15

        1.  Motion to Vacate Unlawfully Issued Writ of Execution .................... 15

        2.  Riverside Complaint ........................................................................... 15

        3.  Judge Palazuelos' Sanctions Order .................................................... 16

        4.  Attempts to Disqualify Judge Palazuelos .......................................... 16

        5.  Iowa State Action ............................................................................... 17

        6.  Iowa Federal Action ........................................................................... 18

        7.  Chief District Judge Jarvey's Published Sanctions Order ................. 19

        8.  Frivolous Removal to Central District of California .......................... 20

III.  LEGAL ARGUMENT ........................................................................................... 21

    A.  The Court should dismiss this Bankruptcy Case. .......................................... 21

        1.  Legal Standard ................................................................................... 21

        2.  Cause exists to dismiss this Bankruptcy Case. .................................. 22

            a.  Debtor filed the Bankruptcy Case for the improper purpose of
                avoiding payment of an appeal bond. ...................................... 22

            b.  Debtor filed the Bankruptcy Case in bad faith to delay, hinder,
                and frustrate the Tribe. ............................................................ 27

            c.  The Bankruptcy Case has no legitimate reorganizational purpose. .. 29

**CREDITOR GABRIELINO-TONGVA TRIBE'S NOTICE OF MOTION AND MOTION TO DISMISS
BANKRUPTCY CASE OR, ALTERNATIVELY, TO CONVERT TO CHAPTER 7**

     d.  Debtor dissipated substantial assets prior to commencing the
Bankruptcy Case, including multiple transfers to his wife. . . . . . . . . 31

     e.  Debtor is using cash collateral without this Court's authorization
to the substantial deteriment of the Tribe. . . . . . . . . 32

     f.  Debtor has failed to satisfy his reporting requirements. . . . . . . . . 33

B.  Alternatively, the Court should convert this Bankruptcy Case to
Chapter 7. . . . . . . . . 35

IV.    CONCLUSION . . . . . . . . 35

**CREDITOR GABRIELINO-TONGVA TRIBE'S NOTICE OF MOTION AND MOTION TO DISMISS
BANKRUPTCY CASE OR, ALTERNATIVELY, TO CONVERT TO CHAPTER 7**

# TABLE OF AUTHORITIES

## STATUTES

### United States Code

| | |
|---|---:|
| 11 U.S.C. § 362 | 25 |
| 11 U.S.C. § 363(a) | 32 |
| 11 U.S.C. § 363(c)(2) | 32 |
| 11 U.S.C. § 363(e) | 33 |
| 11 U.S.C. § 523(a)(2) | 30 |
| 11 U.S.C. § 523(a)(4) | 30 |
| 11 U.S.C. § 523(a)(6) | 30 |
| 11 U.S.C. § 552(b) | 32 |
| 11 U.S.C. § 1112 | 21 |
| 11 U.S.C. § 1112(b) | 22, 31, 25 |
| 11 U.S.C. § 1112(b)(1) | 21 |
| 11. U.S.C. § 1112(b)(4) | 21, 22 |
| 11 U.S.C. § 1112(b)(4)(D) | 32 |
| 11 U.S.C. § 1112(b)(4)(F) | 33 |
| 11 U.S.C. § 1129(a)(3) | 29, 31 |
| 11 U.S.C. § 1129(a)(11) | 31 |

### Federal Rules of Bankruptcy Procedure

| | |
|---|---:|
| Rule 2015.3 | 34 |
| Rule 2015.3(a) | 34 |
| Rule 2015.3(b) | 34 |
| Rule 2015.3(c) | 34 |

### Local Rules

| | |
|---|---:|
| Rule 2015-2(b) | 33 |

**CREDITOR GABRIELINO-TONGVA TRIBE'S NOTICE OF MOTION AND MOTION TO DISMISS
BANKRUPTCY CASE OR, ALTERNATIVELY, TO CONVERT TO CHAPTER 7**

Rule 2015-2(b)(1) 34

Rule 2015-2(b)(2) 34

California Statutes

Code of Civil Procedure § 708.110 14

Code of Civil Procedure § 708.110(d) 33

Code of Civil Procedure § 917.1 14, 23

Code of Civil Procedure § 917.1(a)(1) 23

**CASE LAW**

Albany Partners, Ltd. V. Westbrook (In re Albany Partners, Ltd.), 749 F. 2d 670

(11th Cir. 1984) 21

Cothran v. United States, 45 B.R. 836

(S.D. Ga 1984) 33

Elite of L.A., Inc. v. Hamilton (In re Hamilton), 803 Fed. Appx. 123

(9th Cir. 2020) 30

First Southern Nat'l Bank v. Sunnyslope Hous. Ltd. P'ship (In re Sunnyslope Hous.

Ltd. P'ship), 314 F. 3d 1070

(9th Cir. 2017) 29

Gabrielino-Tongva Tribe v. Stein, 2021 U.S. Dist. LEXIS 199237

(C.D. Cal. Oct. 14, 2021) 21

Golden v. Clear Advantage Mktg., 2020 U.S. Dist. LEXIS 88130

(S.D. Iowa Mar. 30, 2020) 20

Grant v. Superior Court, 225 Cal. App. 3d 929

(1990) 23

In re 10 Bears at Chiloquin, Inc., 2007 Bankr. LEXIS 1997

(Bankr. D. Or. June 6, 2007) 31

**CREDITOR GABRIELINO-TONGVA TRIBE'S NOTICE OF MOTION AND MOTION TO DISMISS BANKRUPTCY CASE OR, ALTERNATIVELY, TO CONVERT TO CHAPTER 7**

In re Acequia, Inc., 787 F. 2d 1352

    (9th Cir. 1986) ... 29

In re Arnold, 806 F. 2d 937

    (9th Cir. 1986) ... 22

In re Avalon Hotel Partners, LLC, 302 B.R. 377

    (Bankr. D. Or. 2003) ... 22

In re Chinichian, 784 F. 2d 1440

    (9th Cir. 1986) ... 29

In re Chu, 253 B.R. 92

    (S.D. Cal. 2000) ... 25

In re Consolidated Pioneer Mortg. Entities, 248 B.R. 368

    (9th Cir. B.A.P. 2000) ... 22

In re Erkins, 253 B.R. 470

    (Bankr. D. Idaho 2000) ... 23

In re Greenfield Drive Storage Park, 207 B.R. 913

    (9th Cir. B.A.P. 1997) ... 22

In re Integrated Telecom Express, Inc., 384 F. 3d 108

    (3d Cir. 2004) ... 22, 25

In re Karum Group, Inc., 66 B.R. 436

    (Bankr. W.D. Wash. 1986) ... 25

In re McConville, 110 F. 3d 47

    (9th Cir. 1997) ... 33

In re Mense, 509 B.R. 269

    (Bankr. C.D. Cal. 2014) ... 24, 26

In re Mosser, 2009 WL 1346152

    (Bankr. D. Mont., May 13, 2009) ... 25

In re Premier Golf Properties, LP, 564 B.R. 710

    (Bankr S.D. Cal. 2016) ... 32

**CREDITOR GABRIELINO-TONGVA TRIBE'S NOTICE OF MOTION AND MOTION TO DISMISS BANKRUPTCY CASE OR, ALTERNATIVELY, TO CONVERT TO CHAPTER 7**

In re Safeguard Self-Storage Trust, 2 F. 3d 967

    (9th Cir. 1993)        32

In re Scottsdale Med. Pavilion, 159 B.R. 295

    (9th Cir. B.A.P. 1993)        32

In re St. Paul Self Storage Ltd. Prt., 185 B.R. 580

    (B.A.P. 9th Cir. 1995)        27

Kipperman v. Proulx (In re Burns), 291 B.R. 846

    (B.A.P. 9th Cir. Feb. 3, 2003)        33

Lewin v. Anselmo, 56 Cal. App. 4th 694

    (1997)        23

Marsch v. Marsch (In re Marsch), 36 F. 3d 825

    (9th Cir. 1994)        22, 24

Marrama v. Citizens Bank of Massachusetts, 549 U.S. 365

    (2007)        31

Marshall v. Marshall (In re Marshall), 721 F. 3d 1032

    (9th Cir. 2013)        22

Nelson v. Meyer (In re Nelson), 343 B.R. 671

    (9th Cir. B.A.P. 2006)        22, 35

Platinum Capital, Inc. v. Sylmar Plaza, L.P. (In re Sylmar Plaza, L.P.), 314 F.3d 1070

    (9th Cir. 2002)        29

**CREDITOR GABRIELINO-TONGVA TRIBE'S NOTICE OF MOTION AND MOTION TO DISMISS
BANKRUPTCY CASE OR, ALTERNATIVELY, TO CONVERT TO CHAPTER 7**

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Debtor Jonathan Stein is a licensed attorney who has terrorized his former client, the Tribe, for over twenty years.  In the early 2000s, Stein defrauded the Tribe out of over $20,000,000.00.  After the Tribe filed suit against Stein in 2006, Stein stole the Tribe's identity, formed a sham tribe, and attempted to deceive the trial court into ruling that his sham tribe was the "real" Tribe.  By applying his legal acumen for utterly nefarious purposes, Stein prolonged the action by thirteen years.

In August 2019, the Superior Court of California, County of Los Angeles, Hon. Judge Yvette Palazuelos presiding, entered judgment for the Tribe in the amount of $20,411,067.23 in compensatory damages, plus $7,000,000.00 in punitive damages.  The judgment also commanded Stein to return, within thirty days, all of the Tribe's membership records, birth certificates, bloodline records, and all other confidential data that Stein had stolen from the Tribe.

Two years after entry of judgment, Stein has still not returned any of the Tribe's records or satisfied any portion of the judgment, which is now over $33,000,000.00.  Instead, Stein has only compounded his fraud post-judgment by, *inter alia*, abusing judicial process to escape the trial court's jurisdiction.  In the last year alone, Stein has unsuccessfully (1) sued the Tribe in different states and counties to deceive unfamiliar judges into issuing rulings that contradict the judgment, (2) attempted to disqualify the trial judge from presiding over post-judgment proceedings, and (3) improperly removed the underlying 15-year-old state action to federal court to strip the trial court of jurisdiction.  To date, all such escape efforts have failed. Multiple judicial officers have sanctioned Stein and his attorneys for their jurisdictional gamesmanship.

As fully set forth below, Stein did not file this Bankruptcy Case in good faith.  Rather, this filing is only Stein's latest dilatory tactic in an ongoing pattern of obstruction and abuse. Thus, the Tribe requests the Court dismiss this action with an eighteen-month bar on refiling. Alternatively, the Tribe requests the Court convert this action to a Chapter 7 proceeding.

**CREDITOR GABRIELINO-TONGVA TRIBE'S NOTICE OF MOTION AND MOTION TO DISMISS BANKRUPTCY CASE OR, ALTERNATIVELY, TO CONVERT TO CHAPTER 7**

## II.    STATEMENT OF FACTS

### A.    Overview

On November 2, 2006, the Tribe filed a lawsuit against Jonathan Stein in the Superior Court of California, County of Los Angeles (the "Underlying Action").  (Dkt. No. 23 [Request for Judicial Notice in Support of Motions for Relief from the Automatic Stay], Exh. 2, ¶ 1.) Roughly thirteen years later, on August 27, 2019, the Tribe obtained a judgment of $20,411,067.23 in compensatory damages and $7,000,000.00 in punitive damages ("Judgment") against Stein and his alter egos, Jonathan Stein dba Law Offices of Jonathan Stein ("Law Offices") and St. Monica Development Company, LLC ("SMDC").  (Dkt. No. 23, Exh. 1.)

On the same date as the Judgment, the trial court issued a 138-page Statement of Decision, finding, *inter alia*:

> Stein committed many incidences of fraud.  Stein's fraud against the Tribe began with the inception of his relationship with them . . . It continued after their relationship ended, when this litigation had already started.    Stein took the identity of the Tribe using membership records without permission, and registered a different group with the Secretary of State with the exact same name as the Tribe, as an unincorporated association, and then tried to settle the instant lawsuit [with himself].  Evidence of fraud is extensive and at the center of this case.    Stein engaged in oppressive and malicious conduct.  Stein set up the Tribe's offices in his Law Offices and gave his law office manager . . .  the job of Tribal Administrator, in order to control the Tribe and its legal and financial affairs.    And when the Tribal Councilmembers confronted Stein in those offices, Stein threatened them, threw objects at them, and cast them out of their own offices.  In the Court's view, among the worse things Stein did was his failure to return the Tribe's original birth and family records to the Tribe after Stein was fired/resigned . . .  thus preventing the Tribe from pursuing federal recognition (a 25-30 year process).  To this day, almost 15-20 years later, Stein has not returned the records.  Stein is a recidivist in targeting Native Americans for exploitation . . . Stein preyed upon Native American groups . . .  and when he could not persuade them, he later sued them to gain access to their records . . . Stein used his status as a lawyer, a position of trust, as a weapon against a less sophisticated client.  Further, Stein used litigation as a weapon . . .  against the Tribe.

**CREDITOR GABRIELINO-TONGVA TRIBE'S NOTICE OF MOTION AND MOTION TO DISMISS
BANKRUPTCY CASE OR, ALTERNATIVELY, TO CONVERT TO CHAPTER 7**

(Dkt. No. 23, Exh. 2, ¶¶ 89 - 92.)  The trial court specifically found Stein's misconduct "fraudulent, despicable, oppressive and malicious."  (Dkt. No. 23, Exh. 2, ¶ 88.)

**B.    Trial (2016-2019)**

The Honorable Judge Yvette Palazuelos presided over a trifurcated trial of the Underlying Action.  (Dkt. No. 23, Exh. 2, ¶¶ 14-17.)  The first phase of trial was on the Tribe's identity and standing.  (Dkt. No. 23, Exh. 2, ¶ 14.)  The second phase was on liability and compensatory damages.  (Dkt. No. 23, Exh. 2, ¶¶ 15-17.)  The third phase was on punitive damages.  (*Id*.)

After the first phase of trial, the court ruled that the Tribe is the only Tribe, and that Stein's sham tribe is not the real Tribe.  (Dkt. No. 23, Exh. 2, ¶¶ 14, 71, 88-95.)  After the second phase, on November 8, 2018, the court issued an order (1) finding Stein, SMDC and Law Offices liable on all fifteen of the Tribe's causes of action, (2) awarding the Tribe $20,411,067.23 in compensatory damages; (3) finding that Stein, SMDC and Law Offices acted with malice, oppression and fraud against the Tribe; and (4) finding that Stein, SMDC and Law Offices are alter egos of one another ("Compensatory Damages Award").  (Request for judicial Notice in Support of Motion to Dismiss ["RJN"], Exh. 1.)

The Compensatory Damages Award also scheduled the third phase of trial on punitive damages, ordering Stein and his alter egos to disclose their financial records within a week and personally appear with their accountants.  (Id.)

Stein failed to comply with the Compensatory Damages Award.  (Dkt. No. 23, Exh. 1, ¶¶ 17, 93-103; RJN, Exh. 2, p. 12.)  Stein failed to satisfy any portion of the monetary award. (Declaration of Paul Young ["PY Decl."], ¶ 4.)  Stein failed to produce his financial records, his Law Offices' financial records, or SMDC's financial records.  (Dkt. No. 23, Exh. 2, ¶¶ 17, 94-95.)  Stein and his accountants failed to appear for the third phase of trial.  (Id.)

**C.    Misconduct During Trial**

Instead of appearing and disclosing his assets to the Tribe, Stein did the exact opposite: transferring and concealing his assets from the Tribe *during trial*:

On February 21, 2017, Stein purchased real property in Santa Barbara County (the "Kirk

---

12

Property"), placing only 1% of title in his name, with the remaining 99% in the name of his wife, Linda Hong Sun Stein, as her "sole and separate property." (RJN, Exh. 5, p. 7.)

On July 22, 2018, a Statement of Information filed with the California Secretary of State reflected Stein's wife as the sole manager of Santa Barbara Milpas Property Company, LLC, an entity that owns income-producing commercial property at 500 N. Milpas Street in Santa Barbara County. (RJN, Exh. 5, p. 11.) Five years prior to that filing, the registration for the same entity, as filed with the California Secretary of State, reflected Jonathan Stein as the sole principal. (RJN, Exh. 5, p. 10.) The Tribe is informed that Stein transferred his ownership interest in this entity to his wife prior to July 22, 2018 to evade impending collection efforts.

On December 1, 2018, just three weeks after the Compensatory Damages Award and still during trial, Stein and his wife executed an agreement whereby Stein further transferred valuable assets to his wife as her "sole and separate property." This time, Stein transferred 50% of his rights to over $880,000.00 in legal fees that Stein had generated as an attorney, as well as 50% of Stein's chose-in-action (now worth over $1,600,000.00) in an action pending in the United States District Court for the Southern District of Iowa. (Dkt. No. 23, Exh. 28, pp. 3-4.)

On December 21, 2018, Stein converted debtor Law Offices into a professional corporation: Law Offices of Jonathan Stein, P.C. ("Professional Corporation"). (RJN, Exhs. 3 and 4.) For the previous 28 years, Stein had operated Law Offices in his individual capacity, as a fictitious business name. (Dkt. No. 23, Exh. 2, ¶ 172.) Stein thus transferred his law firm's assets to a newly-formed, non-debtor corporation to evade impending collection.

On February 1, 2019, Jonathan and his wife executed another assignment agreement, whereby Stein transferred (1) 99% of his rights to the above-referenced $800,000.00 in legal fees to his wife as her "sole and separate property," and (2) 99% of the above-referenced chose-in-action to his wife as her "sole and separate property." Stein retained only 1% of each asset after these transfers. (Dkt. No. 23, Exh. 28, pp. 3-4.)

On February 22, 2017, Jonathan Stein purchased another parcel of real property in Santa Barbara County (the "Murrell Property"), again placing only 1% of title in his name, with the remaining 99% in the name of his wife as her "sole and separate property." (RJN, Exh. 5, p. 5.)

**CREDITOR GABRIELINO-TONGVA TRIBE'S NOTICE OF MOTION AND MOTION TO DISMISS
BANKRUPTCY CASE OR, ALTERNATIVELY, TO CONVERT TO CHAPTER 7**

Stein purchased this property after the second phase of trial and while evading a $20,411,067.23 debt to the Tribe.

The above-listed fraudulent transfers are the subject of two pending actions between the Tribe and Stein.  (Dkt. No. 23, Exh. 28; RJN, Exh. 5.)

**D.    Entry of Judgment and Liens on Real and Personal Property**

On August 27, 2019, the trial court entered the Judgment on all of the Tribe's causes of action against Stein and his alter egos:  (1) Conversion; (2) Breach of Fiduciary Duty; (3) Misappropriation of Trade Secrets; (4) Breach of Confidence; (5) Intentional Interference with Economic Relations; (6) Negligent Interference with Economic Relations; (7) Breach of Contract; (8) Breach of Implied Covenant of Good Faith and Fair Dealing; (9) Legal Malpractice; (10) Declaratory Relief; (11) Violation of California Penal Code section 502(c); (12) Unfair Competition; (13) Rescission per California Rules of Professional Conduct, Rule 3-300; (14) Alter Ego; and (15) Fraud.  (Dkt. No. 23, Exh. 1.)

The Tribe filed a judgment lien with the California Secretary of State on April 13, 2020. (RJN, Exh. 6.)  The Tribe also recorded Abstracts of Judgment in Santa Barbara County (April 21, 2020), Ventura County (April 29, 2020), Los Angeles County (May 19, 2020), and San Bernardino County (October 15, 2020).  (RJN, Exhs. 7-10.)  The Tribe served Stein with an Order to Appear for Examination ("ORAP") on April 25, 2020 and again on June 20, 2021, thereby creating a lien on Stein's personal property pursuant to California Code of Civil Procedure Section 708.110.  (RJN, Exhs. 11-14.)

**E.    Appeal of Judgment**

On November 8, 2019, Stein and his co-judgment debtors filed a Notice of Appeal of the Judgment, but did not post a bond to stay enforcement of the Judgment pursuant to California Code of Civil Procedure Section 917.1.  (Dkt. No. 23, Exh. 3.)  Stein has repeatedly stated in multiple court filings, and recently testified during his Rule 341 meeting of creditors, that he cannot afford to post an appellate bond. (Dkt. No. 23, Exhs. 7, 13, 29 and 31; PY Decl., ¶ 13.)

On March 16, 2021, the Tribe filed a motion to dismiss Stein's appeal under California's "disentitlement doctrine," which provides that an appellate court may dismiss an appeal by a

**CREDITOR GABRIELINO-TONGVA TRIBE'S NOTICE OF MOTION AND MOTION TO DISMISS BANKRUPTCY CASE OR, ALTERNATIVELY, TO CONVERT TO CHAPTER 7**

judgment debtor who has (1) disobeyed a trial court's judgment, orders or judicial process; or (2) obstructed the judgment creditor's collection efforts.  (Dkt. No. 23, Exh. 4.)

Stein filed his opening brief on appeal on August 4, 2021.  (Id.)  Stein then filed an opposition to the Tribe's pending motion to dismiss the appeal.  (Id.)  On November 5, 2021, the Tribe filed an application for leave to file a reply brief in support of its motion to dismiss.  (Id.)  Three days later, Stein filed this Bankruptcy Case.  (Dkt. No. 1.)

## F.    Post-Judgment Misconduct

From the trial court's entry of the Judgment on August 27, 2019 through the present, Stein has repeatedly attempted to escape the trial court's jurisdiction and block the Tribe's collection efforts.  To date, all such efforts have failed.  Although Stein's post-judgment misconduct is too extensive to recite here, the Tribe attempts to provide the Court with sufficient context for Stein's current attempt to divest the trial court of jurisdiction.

### 1.    Motion to Vacate Unlawfully Issued Writ of Execution

On April 14, 2020, the Tribe obtained a Writ of Execution to enforce its Judgment.  (Dkt. No. 23, Exh. 6.)  Stein responded by filing a "Motion to Vacate Unlawfully Issued Writ of Execution."  (Dkt. No. 23, Exh. 8.)  In that motion, Stein argued – to the very court that issued the Judgment after thirteen years of litigation – that the court had violated the law because the Tribe is not the "real" Tribe.  (Id.)  After the Tribe served Stein with a motion for sanctions, Stein withdrew his filing.  (Dkt. No. 23, Exh. 11.)

### 2.    Riverside Complaint

On August 26, 2020, Stein recycled the above frivolous motion into a new complaint, which he tactically filed outside the trial court.  (Dkt. No. 23, Exh. 9.)  Specifically, Stein sued the Tribe and nineteen other defendants in the Riverside County Superior Court, Hon. Judge Chad Firetag presiding, and again alleged that the Tribe is not the "real" Tribe ("Riverside Complaint").  (Id.)  Filed one year after the Judgment, the Riverside Complaint attempted to deceive an unfamiliar judge into readjudicating the fully-adjudicated issue of the Tribe's identity.

Worse than the Motion to Vacate Unlawfully Issued Writ of Execution, the Riverside

**CREDITOR GABRIELINO-TONGVA TRIBE'S NOTICE OF MOTION AND MOTION TO DISMISS BANKRUPTCY CASE OR, ALTERNATIVELY, TO CONVERT TO CHAPTER 7**

1    Complaint facetiously alleged that *twenty* different defendants could qualify as "candidates" for

2    the role of "judgment creditor" – including the sham tribe that Stein had formed during the

3    Underlying Action.  (<u>Id</u>.)  Perhaps the most egregious component of the Riverside Complaint

4    was its label as an "interpleader."  Stein mocked the Tribe by depositing a total of $100.00 with

5    the Riverside Court towards satisfaction of the Tribe's $30,000,000.00 Judgment, and asked

6    Judge Firetag to preside over an entirely new action to determine who gets to keep his

7    "lucrative" deposit.  (<u>Id</u>.)

8                **3.    Judge Palazuelos' Sanctions Order**

9         While the Riverside action was pending, the trial court issued an order sanctioning

10   Stein's counsel, John K. Rubiner and his law firm of Freeman Mathis & Gary LLP ("FMG"), in

11   the fully requested amount of $16,000.00, for continuing to challenge the Tribe's identity post-

12   judgment ("Sanctions Order").  (Dkt. No. 23, Exh. 17.)

13            **4.    Attempts to Disqualify Judge Palazuelos**

14        On October 21, 2020, the Tribe filed two motions in the trial court in response to Stein's

15   frivolous Riverside Complaint: (1) Motion to Transfer Riverside Complaint to Los Angeles; and

16   (2) Motion for Terminating Sanctions (dismissal of Riverside Complaint) and Monetary

17   Sanctions against Stein's counsel in the amount of $44,625.00.  (Dkt. No. 23, Exhs. 14 and 15.)

18        On October 28, 2020, Stein responded by filing an improper "Peremptory Challenge to

19   Judicial Officer," seeking to disqualify Judge Palazuelos from hearing the Tribe's motions or

20   presiding over any post-judgment proceedings moving forward.  (Dkt. No. 23, Exh. 16.)  As a

21   reminder, the deadline to file a peremptory challenge to a judicial officer is fifteen days after the

22   judge is assigned.  Here, Stein attempted to do so nearly fifteen *years* after the Tribe's initiation

23   of the Underlying Action.

24        On November 2, 2020, Stein filed another peremptory challenge, this time in the

25   Riverside Court, somehow asking Judge Firetag to disqualify Judge Palazuelos from the trial

26   court. (Dkt. No. 23, Exh 18.)  The Riverside Court immediately rejected Stein's filing.

27        On November 5, 2020, Stein filed an *ex parte* application asking Judge Palazuelos to

28   delay the hearings on the Tribe's motions to give Stein more time to disqualify Judge

**CREDITOR GABRIELINO-TONGVA TRIBE'S NOTICE OF MOTION AND MOTION TO DISMISS
BANKRUPTCY CASE OR, ALTERNATIVELY, TO CONVERT TO CHAPTER 7**

Palazuelos from ever hearing the Tribe's motions.  (Dkt. No. 23, Exh. 19.)  Judge Palazuelos

summarily denied the application from chambers.  (Dkt. No. 23, Exh. 21.)

On November 6, 2020, Stein filed another peremptory challenge to Judge Palazuelos, in

the form of a 15-page diatribe titled "Response re: Peremptory Challenge."  (Dkt. No. 23, Exh.

20.)  In that filing, Stein insulted Judge Palazuelos:

> Perhaps this Court's personal bias in favor of GT Tribe is part of a
> political effort to give recognition to underprivileged Native
> Americans indigenous to Los Angeles County.  If so . . . the
> Judgment is impossible to enforceable (*sic*).

(Id. at 6:1-4.)  (Emphasis in original.)

> The Court indicates its bias by ignoring these facts or the need to
> adjudicate them.  This Court abrogated from the Legislature and
> Governor the right to recognize GT Tribe as an Indian Tribe, and it
> did so in its Judgment and Statement of Decision.  This Court
> attempts to create new California history, and bestow a boon to
> underprivileged Native Americans indigenous to Los Angeles
> County.  In the process, [the Court] acted unlawfully and, as a
> happenstance, crafted a Judgment that is impossible to enforce.

(Id. at 6:19-24.)

On November 12, 2020, Stein again tried to disqualify Judge Palazuelos, this time with a

"Notice of Resubmission of Previously Submitted Response re: Peremptory Challenge."  (Dkt.

No. 23, Exh. 22.)  Stein again failed to disqualify the trial judge.  On November 13, 2020, the

Tribe and Stein's counsel, Rubiner and FMG, settled the Tribe's Motion for Sanctions relating

to the Riverside Complaint.  (PY Decl., ¶ 7.)

On November 16, 2020, three days before the hearing on the Tribe's motions, realizing

that he could not disqualify Judge Palazuelos, Stein dismissed the Riverside Complaint without

prejudice.  (Dkt. No. 23, Exh. 23.)

### 5.    Iowa State Action

Before dismissing the Riverside Complaint, however, Stein and his wife recycled it and

again sued the Tribe, this time in Iowa state court, Case No. CVCV060511, Hon. Judge David

Nelmark presiding ("Iowa State Action").  (Dkt. No. 23, Exh. 12.)  They did so in retaliation to

**CREDITOR GABRIELINO-TONGVA TRIBE'S NOTICE OF MOTION AND MOTION TO DISMISS
BANKRUPTCY CASE OR, ALTERNATIVELY, TO CONVERT TO CHAPTER 7**

the Tribe's levies on (1) Stein's above-referenced chose-in-action, in a federal action by Stein against his former client, Glenn Golden, in the United States District Court for the Southern District of Iowa, Case No. 4:18-cv-00331-JAJ-HCA ("Iowa Federal Action"); and (2) Stein's rights to roughly $880,000.00 deposited with the Southern District's federal registry in the same action ("Federal Deposit"). By way of background, the Iowa Federal Action arose from Stein's representation of Glenn Golden in a prior action, Case No. 4:16-cv-00529-JAJ-HCA. After that action settled, Golden sued Stein for malpractice and Stein counter-sued for unpaid attorney's fees and costs. (Dkt. No. 23, Exh. 41.)

The Steins' Iowa Complaint against the Tribe mirrored Stein's frivolous Riverside Complaint (down to the $100.00 interpleader). (Dkt. No. 23, Exhs. 9 and 12.) The Steins thus blocked the Tribe's levies by initiating another frivolous lawsuit to deceive yet another unfamiliar judge into readjudicating the Tribe's identity. (Id.) After the Tribe presented Judge Nelmark with the Judgment, Statement of Decision, and Sanctions Order, Juge Nelmark dismissed the Steins' Complaint with prejudice. (RJN, Exh. 15.)

Unfortunately, the dismissal did not deter the Steins, who then threatened to sue the Polk County Sheriff's Department for attempting to execute the Tribe's levies. Stein claimed that he had transferred all of his rights in the Iowa Federal Action to his wife as her separate property. (Dkt. No. 23, Exh. 28, p. 3.) In response, the Polk County Sheriff's Department required the Tribe to post an indemnification bond of $1.3 million to protect the Sheriff's Department from legal action by the Steins. The Tribe did not have the financial means to do so, since Stein has drained the Tribe financially (and otherwise) over the last two decades. Thus, the Sheriff's Department released the Tribe's levies. (Dkt. No. 23, Exh. 28, p. 4.)

### 6.    Iowa Federal Action

With the levies released on the eve of trial in the Iowa Federal Action, on October 16, 2020, the Tribe quickly filed a motion to intervene. (Dkt. No. 23, Exh. 28.) Chief District Judge John A. Jarvey granted the Tribe's motion "of right," finding intervention mandatory. (Id.) The purpose of the Tribe's intervention was to obtain a judicial determination that Stein had fraudulently assigned his rights to his own chose-in-action and the Federal Deposit to his

wife to evade the Tribe's collection efforts.  Upon obtaining such a decree, the Tribe would "step into the shoes" of Stein as a secured judgment creditor, settle Stein's claims against Golden (and Golden's counterclaims against Stein), and finally obtain partial satisfaction of the Judgment.  The intervenor defendants were Stein, his wife, SMDC, and the Professional Corporation.  (Dkt. No. 23, Exh. 41.)

Over the next nine months, Stein and his co-defendants abused virtually every procedural vehicle to delay adjudication of their fraudulent transfers – an issue they had fabricated in the first instance.  Examples include motions to dismiss the Tribe's intervention complaint after Judge Jarvey had found intervention mandatory, motions for leave to appeal Judge Jarvey's order denying their motions to dismiss, and over a dozen motions for extensions of deadlines, overlength briefs, sur-replies, and other dilatory filings.  (Id.)

On July 7, 2021, the Tribe filed a motion for summary judgment on its two causes of action: (1) a creditor's claim under Iowa Code section 630.16 and (2) declaratory judgment. (Id.)  On October 12, 2021, after the parties had fully briefed the Tribe's motion, Judge Jarvey issued an order finding it "mind boggling" that Stein and his cohorts had failed to submit "a single document" to support their primary defense to the Tribe's motion.  (Dkt. No. 23, Exh. 32, p. 2.)  Judge Jarvey provided Stein and his co-defendants with a final opportunity to produce such evidence, and set a supplemental briefing schedule on the Tribe's motion.  (Id. at p. 3.)

Six days after the Tribe filed its supplemental brief, Stein filed this Bankruptcy Case, followed by a Notice of Automatic Stay.  Since then, Stein has proudly informed Chief District Judge Jarvey and Chief Magistrate Judge Helen Adams that the Tribe cannot obtain relief from the automatic stay or obtain a ruling on its pending motion for summary judgment because Stein now owns the Tribe's claims (against himself) as a debtor in possession.  (RJN, Exh. 16.)  Thus, after exhausting all procedural tools to unsuccessfully obstruct the Tribe's claims in the Iowa Federal Action, Stein filed this case to take the Tribe's claims for himself.

### 7.      Chief District Judge Jarvey's Published Sanctions Order

As further evidence of Stein's continuous bad faith conduct, on March 30, 2020, prior to the Tribe's intervention, Judge Jarvey sanctioned Stein, in the form of a public reprimand in a

57-page published decision, for violating the Iowa Rules of Professional Conduct.  Stein's

misconduct included: (a) threatening opposing counsel with physical harm; (b) threatening

opposing counsel with professional ruin; (c) accusing opposing counsel of impropriety; (d)

repeatedly disparaging Iowa attorneys with slurs, innuendos, and profanity; (e) threatening and

attempting to intimidate court reporters; and (f) questioning the competence, impartiality and

integrity of a mediator, who is a former Justice of the Iowa Supreme Court.  <u>Golden v. Clear

Advantage Mktg.</u>, No. 4:16-cv-00529-JAJ-CFB, 2020 U.S. Dist. LEXIS 88130, at *22-81 (S.D.

Iowa Mar. 30, 2020).  Judge Jarvey concluded:  "[T]he appropriate sanction is a public

reprimand in a published decision . . . [B]ecause of its dissemination and longevity, it should

also make clear this court's, the bar's and society's opprobrium of such conduct impeding and

prejudicing the administration of justice."  (<u>Id</u>.)

**8.    Frivolous Removal to Central District of California**

Finally, Iowa is not the only place where Stein has obstructed the Tribe's levies.  On

June 29, 2021, the Tribe caused levies to be served on financial institutions in California where

Stein and his wife were believed to maintain accounts.  (PY Decl., ¶ 8.)  While California's

Enforcement of Judgments Law ("EJL") provides a comprehensive scheme for debtors and third

parties to challenge levies in the originating court (*i.e.*, the trial court), Stein predictably sought

to do anything but.

On July 20, 2021 Stein filed a Notice of Removal of the entire 15-year-old Underlying

Action to the Central District of California, thereby automatically staying all proceedings in the

trial court and causing numerous hearings to be taken off calendar.  (Dkt. No. 23, Exh. 30, ¶ 2.)

As a reminder, the deadline to remove a state action to federal court is thirty days after service

of the summons, which in the Underlying Action had occurred fifteen years ago.

On October 14, 2021, the Honorable Judge Mark C. Scarsi of the Central District of

California remanded the Underlying Action to the trial court and issued a fee/sanctions award in

the fully requested amount of $23,010.00 against Stein and his counsel: Robert Forouzandeh,

Esq., Mr. Forouzandeh's law firm of Reicker, Pfau, Pyle & McRoy LLP, and the Professional

Corporation:

**CREDITOR GABRIELINO-TONGVA TRIBE'S NOTICE OF MOTION AND MOTION TO DISMISS
BANKRUPTCY CASE OR, ALTERNATIVELY, TO CONVERT TO CHAPTER 7**

The Court finds that removal was objectively unreasonable or frivolous in light of the unique circumstances surrounding this case. Defendants have engaged in a series of fraudulent conduct, as found by the trial court in its Statement of Decision. (MTR at 10-11; RJN Ex. 2, ¶ 88, ECF No. 12-2 at 53.) **Defendants have also engaged in a series of post-judgment misconduct, including multiple attempts to take jurisdiction from the state court by filing cases in other courts (this Court included)** . . . Indeed, these circumstances establish evidence of conduct so untenable that fees or sanctions are appropriate for both of Defendants' attorneys.

Gabrielino-Tongva Tribe v. Stein, 2021 U.S. Dist. LEXIS 199237 at *11 (C.D. Cal. Oct. 14, 2021) (emphasis added).

In addition to blocking Judge Jarvey's adjudication of the Tribe's motion for summary judgment in the Southern District of Iowa, Stein filed this Bankruptcy Case within days of Judge Palazuelos reassuming jurisdiction from Judge Scarsi, which would have permitted the Tribe to reinitiate its levies and other judgment enforcement actions. In light of the above timeline, this filing represents a clear effort to frustrate, delay and evade state court proceedings, which is indicative of bad faith and constitutes an improper purpose.

### III.    LEGAL ARGUMENT

**A.    The Court should dismiss this Bankruptcy Case.**

**1.    Legal Standard**

Section 1112 of the Bankruptcy Code provides, in pertinent part, that "on request of a party in interest and after notice and a hearing . . . the court shall convert a [chapter 11] case to a case under chapter 7 or dismiss a [chapter 11] case, whichever is in the best interests of creditors and the estate, if the movant establishes cause." 11 U.S.C. § 1112(b)(1).

While "cause" is defined in Section 1112(b)(4), the list of circumstances constituting "cause" is illustrative, not exhaustive. See Albany Partners, Ltd. v. Westbrook (In re Albany Partners, Ltd.), 749 F.2d 670, 674 (11th Cir. 1984). The enumerated examples of "cause" include "(A) substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation; (B) gross mismanagement of the estate; . . . (D) unauthorized use of cash collateral substantially harmful to 1 or more creditors; (E) failure to

21

**CREDITOR GABRIELINO-TONGVA TRIBE'S NOTICE OF MOTION AND MOTION TO DISMISS BANKRUPTCY CASE OR, ALTERNATIVELY, TO CONVERT TO CHAPTER 7**

comply with an order of the court; (F) unexcused failure to satisfy timely any filing or reporting requirement established by this title or by any rule applicable to a case under this chapter. . . [and] (H) failure timely to provide information . . . requested by the United States trustee . . . ." 11 U.S.C. § 1112(b)(4).

The Court is afforded wide discretion in determining whether cause exists under Section 1112(b). In re Consolidated Pioneer Mortg. Entities, 248 B.R. 368, 375 (9th Cir. B.A.P. 2000) (citing In re Greenfield Drive Storage Park, 207 B.R. 913, 916 (9th Cir. B.A.P 1997)), aff'd 264, F.3d 803 (9th Cir. 2001). "The court will be able to consider other factors as they arise, and to use its equitable powers to reach an appropriate result in individual cases." Id. (internal quotation omitted).

If the motion is predicated on bad faith, "[t]he moving party has the initial burden of making a prima facie case to support its allegations of bad faith." In re Avalon Hotel Partners, LLC, 302 B.R. 377, 384 (Bankr. D. Or. 2003). "Once such a showing has been made, the burden shifts to the debtor to establish that its chapter 11 case was filed in good faith." Id.; see also Marshall v. Marshall (In re Marshall), 721 F.3d 1032, 1048 (9th Cir. 2013); In re Integrated Telecom Express, Inc., 384 F.3d 108, 118 (3d Cir. 2004) ("Chapter 11 bankruptcy petitions are subject to dismissal under 11 U.S.C. § 1112(b) unless filed in good faith, and the burden is on the bankruptcy petitioner to establish that its petition has been filed in good faith.")

In determining whether the petition was filed in good faith, the debtor's "subjective intent" is not determinative. Marsch v. Marsch (In re Marsch), 36 F.3d 825, 828 (9th Cir. 1994). Rather, the good faith inquiry focuses on the manifest purpose of the petition filing and whether the debtor is seeking to achieve "objectives outside the legitimate scope of the bankruptcy laws." Id. That is, the good faith standard requires the bankruptcy court to ascertain "whether [the] debtor is attempting to unreasonably deter and harass creditors or attempting to effect a speedy, efficient reorganization on a feasible basis." Id. (citing In re Arnold, 806 F.2d 937, 939 (9th Cir. 1986)).

If cause is established, the Court should dismiss the case if it is in the best interest of the creditors and the estate. See Nelson v. Meyer (In re Nelson), 343 B.R. 671, 675 (9th Cir. B.A.P.

CREDITOR GABRIELINO-TONGVA TRIBE'S NOTICE OF MOTION AND MOTION TO DISMISS
BANKRUPTCY CASE OR, ALTERNATIVELY, TO CONVERT TO CHAPTER 7

1    2006) ("[O]nce a determination of 'cause' has been made, a choice must be made between

2    conversion and dismissal based on the best interests of creditors and the estate.") (citation

3    omitted); <u>In re Erkins</u>, 253 B.R. 470, 474 (Bankr. D. Idaho 2000) ("The decision whether to

4    dismiss a Chapter 11 case as a bad faith filing is subject to the discretion of the bankruptcy

5    court.")

6            **2.**      **Cause exists to dismiss this Bankruptcy Case.**

7               **a.**      **Debtor filed the Bankruptcy Case for the improper purpose of**

8                      **avoiding payment of an appeal bond.**

9    "Unless an undertaking is given, the perfecting of an appeal shall not stay enforcement

10   of the judgment or order in the trial court if the judgment or order is for any of the following:

11   Money or the payment of money, whether consisting of a special fund or not, and whether

12   payable by the appellant or another party to the action." Cal. Code. Civ. Proc. § 917.1(a)(1).

13   The bond or undertaking required by Section 917.1 is designed to protect the judgment won in

14   the trial court from becoming uncollectible while the judgment is subjected to appellate review.

15   <u>Lewin v. Anselmo</u> 56 Cal. App. 4th 694, 700 (1997). Thus, a successful litigant will be

16   assured that a source of funds exists to satisfy the judgment after postponing the enjoyment of

17   a trial court victory. <u>Grant v. Superior Court</u> 225 Cal. App. 3d 929, 934 (1990).

18   Debtor Jonathan Stein has not posted an undertaking on appeal. Instead, as detailed

19   above, Stein has repeatedly attempted to escape the trial court's jurisdiction during his appeal.

20   Most recently, Stein removed the entire 15-year-old state action from the trial court to federal

21   court, triggering an automatic stay and causing several more months of delay. Notably, Stein

22   filed this action within days of the Honorable Judge Mark Scarci (U.S. District Court, Central

23   District of California) remanding the action to Judge Yvette Palazuelos of the trial court,

24   finding the removal "objectively unreasonable or frivolous" and sanctioning Stein and his

25   counsel for their jurisdictional gamesmanship.

26   Further, instead of filing an undertaking with the Court of Appeal, Stein chose to

27   engage in years of frivolous litigation to evade collection by the Tribe. This Bankruptcy Case

28   is just the latest attempt to obtain a stay of enforcement of the Judgment and further delay

**CREDITOR GABRIELINO-TONGVA TRIBE'S NOTICE OF MOTION AND MOTION TO DISMISS
BANKRUPTCY CASE OR, ALTERNATIVELY, TO CONVERT TO CHAPTER 7**

1  enforcement without having to post a bond.  It is clear that this Bankruptcy Case would not

2  have been filed had the automatic stay not been available to Stein.  That is, the only purpose of

3  the filing is to stay enforcement until Stein's appeal, his last hope, is exhausted.

4      The Ninth Circuit recognizes that a bankruptcy court may dismiss a debtor's chapter 11

5  case for bad faith where the debtor filed bankruptcy solely to delay collection of a judgment

6  and avoid posting an appeal bond.  See In re Marsch, 36 F.3d at 828 (upholding bankruptcy

7  court's determination that chapter 11 petition, which was filed to delay collection of a $2.6

8  million judgment and avoid posting an appeal bond, was filed in bad faith).  When a debtor

9  files for chapter 11 bankruptcy to avoid the requirement for an appellate bond, the

10  determination of good faith hinges on the following factors:

11        1. Whether the debtor is a viable business which would suffer
12        severe disruption if enforcement of the judgment was not stayed;
          and the chapter 11 petition was filed to preserve its status as an
13        ongoing concern and to protect its employees and creditors;

14        2. Whether the debtor had financial problems on the petition date,
15        other than the adverse judgment;

16        3. Whether the debtor has relatively few unsecured creditors, other
17        than the holder of the adverse judgment;

18        4. Whether the debtor has sufficient assets to post a bond to stay
19        the judgment pending appeal;

20        5. Whether the debtor acted in good faith to exhaust all efforts to
          obtain a bond to stay the judgment pending appeal;
21
22        6. Whether the debtor intends to pursue an effective reorganization
          within a reasonable period of time, or whether the debtor is
23        unwilling or unable to propose a meaningful plan until the
          conclusion of the litigation;
24
25        7. Whether assets of the estate are being diminished by the
          combined ongoing expenses of the debtor, the chapter 11
26        proceedings, and prosecution of the appeal.

27  In re Mense, 509 B.R. 269, 279–81 (Bankr. C.D. Cal. 2014).

28

**CREDITOR GABRIELINO-TONGVA TRIBE'S NOTICE OF MOTION AND MOTION TO DISMISS
BANKRUPTCY CASE OR, ALTERNATIVELY, TO CONVERT TO CHAPTER 7**

"Indeed, if there is a 'classic' bad faith petition, it may be one in which the petitioner's only goal is to use the automatic stay to avoid posting an appeal bond in another court." In re Integrated Telecom Express, Inc., supra, 384 F.3d 108 at 128; see also In re Karum Group, Inc., 66 B.R. 436, 438 (Bankr. W.D. Wash. 1986) ("The debtor filed its petition herein to avoid the consequences of adverse state court decisions while it continues litigating. This court should not, and will not, act as a substitute for a supersedeas bond of non-bankruptcy proceedings."); In re Chu, 253 B.R. 92, 97 (S.D. Cal. 2000) (bad faith chapter 11 filing reflected by debtor's intent to "escape the supersedeas bond requirement and preclude [the judgment creditor] from obtaining recovery"); In re Mosser, 2009 WL 1346152 (Bankr. D. Mont., May 13, 2009) ("a debtor's intent to use the automatic stay imposed by 11 U.S.C. § 362 as a substitute for posting a supersedeas bond, without any genuine intent or ability to reorganize, is evidence of bad faith.").

Applying the above factors, it is clear that Stein filed this Bankruptcy Case in bad faith. First, Stein is not a "viable business." Indeed, Stein's bankruptcy schedules state that he is an individual seeking employment and received unemployment benefits of $21,688.00. (Dkt. No. 17, Schedule I and SOFA, No. 5.) Further, Stein did not file this Bankruptcy Case to preserve the status of a viable business as an ongoing concern. Neither did Stein file this Bankruptcy Case to protect employees or creditors of a viable business.

Second, Stein had no notable financial problems other than the Tribe's Judgment, which represents more than 90% of the debts listed in Stein's petition. (Dkt. No. 17, Schedules D and E/F.) As evidenced by Stein's numerous fraudulent transfers during or shortly after the Underlying Action, supra, Stein was not insolvent. Third, Stein has no meaningful unsecured creditors. Most of Stein's unsecured debt arises from the attorney's fees and costs Stein has incurred to evade the Tribe's Judgment, and represents only 1% of Stein's debts. (Dkt. No. 17, Summary of Assets and Liabilities and Schedule E/F, pp. 2 and 22.)

Fourth and fifth, Stein has not acted in good faith to exhaust all efforts to obtain an appellate bond. Stein has not even attempted to obtain such a bond or reach an agreement with the Tribe to post a bond for a lower amount. (PY Decl., ¶ 12.) Instead, Stein has actively

25

CREDITOR GABRIELINO-TONGVA TRIBE'S NOTICE OF MOTION AND MOTION TO DISMISS
BANKRUPTCY CASE OR, ALTERNATIVELY, TO CONVERT TO CHAPTER 7

concealed his assets – including by holding title to real property in the name of his wife,

assigning his attorney's fees to his wife, and otherwise converting non-exempt assets into

exempt assets – to render himself "judgment proof."  (Dkt. No. 23, Exh. 28; RJN, Exhs. 3-5.)

Moreover, instead of properly posting an undertaking (bond), Stein has engaged in a massive

campaign of dilatory litigation tactics to thwart and delay the Tribe's valid judgment

enforcement efforts.

Sixth, as discussed below, there is no legitimate prospect for an effective reorganization

here because, among other things, Stein has no income and the vast majority of Stein's

scheduled assets are prospective lawsuits for legal malpractice against Stein's attorneys (and yet

another lawsuit against the Tribe).  In other words, Stein intends to make his creditors whole by

suing them, draining the estate in the process.

Seventh, Stein's ongoing frivolous litigation to evade collection by the Tribe has

substantially reduced the assets of the estate.  In particular, Schedule A/B lists the amounts

Stein has paid in attorney's fees in connection with the Underlying Action and the subsequent

enforcement of the Judgment, which Stein now claims he will recoup in legal malpractice

actions against his former attorneys.  Additionally, Stein is now on his third attorney in this

Bankruptcy Case even though it was filed less than a month ago.  The unreasonable and

excessive $75,000 retainer, which was paid with the Tribe's cash collateral, is a further example

of an unwarranted and substantial reduction of the assets of the estate.

Further, Schedule A/B sets forth numerous actions that Stein intends on litigating while

the automatic stay is in place.  Thus, Stein intends on exhausting substantial resources in both

the administration of this Chapter 11 as well as the adversary proceedings against his former

attorneys and another frivolous action against the Tribe.

Based on the foregoing, it is clear that Debtor is using the Bankruptcy Case "to re-

litigate, not to reorganize."  Mense, 509 B.R. at 284 (citation omitted).  Debtor is attempting to

receive the benefit of staying enforcement of the Judgment pending his appeal without having

to post a bond to protect the Tribe's interest in the Judgment.  As the law is well settled that a

debtor may not use the automatic stay as a substitute for paying a supersedeas bond, the Court

should dismiss this Bankruptcy Case because it was filed for an improper purpose.

    **b.**  **Debtor filed the Bankruptcy Case in bad faith to delay, hinder, and frustrate the Tribe.**

    Debtor has limited assets, no ongoing business to reorganize, no meaningful scheduled unsecured creditors other than the Tribe, which is undersecured, and no appreciable cash flow or sources of income to sustain a plan of reorganization.  This case is a two-party dispute that has already been resolved in the Tribe's favor.

    In <u>In re St. Paul Self Storage Ltd. Prt.</u>, 185 B.R. 580 (B.A.P. 9th Cir. 1995), the court set forth a list of factors that indicate a Chapter 11 petition was filed in bad faith.  Those factors include (1) the debtor having only minimal assets; (2) the debtor having no ongoing business to reorganize; (3) the absence of any unsecured creditors; (4) the debtor having no appreciable cash flow or sources of income to sustain a plan of reorganization or to make adequate protection payments; and (5) the case essentially being a two-party dispute capable of prompt adjudication in non-bankruptcy court.  <u>Id</u>. at 582-83.

    "Generally speaking, when factors such as these indicate that a debtor is unreasonably deterring or harassing creditors rather than attempting a speedy and feasible reorganization, the court may conclude that the petition has been filed in bad faith and dismiss it."  <u>Id</u>. at 583 (citation omitted).  These factors are similar to those used for determining whether Debtor filed the case for the improper purpose of avoiding payment of a supersedeas bond, discussed above.  For the same reasons, these factors also support a finding that Debtor filed this case in bad faith, which warrants dismissal with an eighteen-month bar on refiling.

    <u>First</u>, Stein's Schedules A/B reflect nominal assets outside of prospective lawsuits against virtually all of Stein's former attorneys, as well as yet another prospective lawsuit against the Tribe, the Chairwoman of the Tribe's Council, and others.  It does not appear that the listed values for these claims take into account the uncertain nature of such litigation, or litigation costs, including attorney's fees that would need to be borne by the estate.  Further,

many of these claims overlap and are duplicative of each other, thus causing an overstatement of their already questionable values.[1]

Second, Stein has no ongoing business to reorganize.  Per Stein's Schedule I, Stein's ability to make plan payments is dependent on Stein suddenly becoming employed and earning a hoped-for $16,660.00 per month from a prospective employer listed as "TBD."  Even if Stein were to obtain such employment, he would still not be able to present a plan to satisfy the secured portion of the Tribe's claim in full and allow for some payment of the unsecured portion, *infra*.

Third, relative to the Tribe, Stein's only other scheduled unsecured creditors are owed a minimal amount.  Again, the Tribe's Judgment represents 90% of Stein's listed debts, and most of the other creditors are law firms that represented Stein in actions against the Tribe.

Fourth, Stein has no appreciable cash flow or sources of income to sustain a plan of reorganization or to make adequate protection payments, *supra*.  Fifth, this case is essentially a two-party dispute capable of prompt adjudication in non-bankruptcy forums, including the California Court of Appeal for resolution of Stein's appeal, and the trial court and other courts (including the Southern District of Iowa) for enforcement purposes.

The timing of Debtor's bankruptcy petition also indicates bad faith.  Stein filed this case immediately after Judge Palazuelos of the trial court reassumed jurisdiction after Judge Scarsi of the Central District of California remanded Stein's frivolous removal and sanctioned

---

[1] The value of "assets" on Debtor's Schedules A/B appears to have been purposefully inflated. Debtor recently testified that the $2.4 million value listed for the membership shares of St. Monica Development Company, LLC is based upon prospective litigation (value of rescinded contracts).  [Dkt. No. 17, p. 7 at item 19.] Debtor then testified that the same $2.4 million claim is encompassed within Debtor's $4 million claim against the Tribe.  [Dkt. No. 17, p. 9 at item 33.] Separately, the operative complaints in the Iowa Federal Action and the Lousiana action that Debtor has scheduled (Case No. 20:20-cv-1593) strongly indicate that the sought damages are based upon the same transactions and occurrences, meaning that the Schedules are most likely overstated by another $1.5 million.  [Id.]  Given these facts, it strongly appears that the assets listed on the Schedules are overstated by at least $3.9 million. [Dkt. No. 17, p. 10 at item 63.] PY Decl., ¶¶ 14 - 15.

**CREDITOR GABRIELINO-TONGVA TRIBE'S NOTICE OF MOTION AND MOTION TO DISMISS BANKRUPTCY CASE OR, ALTERNATIVELY, TO CONVERT TO CHAPTER 7**

Stein and his counsel for their misconduct.  Similarly, Stein filed this case just days after the

Tribe filed its supplemental brief on summary judgment in the Southern District of Iowa, and

after Chief District Judge Jarvey issued an order finding Stein's lack of credible evidence

"mind boggling."  (Dkt. No. 23, Exhs. 32 and 41.)

Additionally, Stein filed this case just three days after the Tribe moved the California

Court of Appeal for leave to file a reply brief in support of the Tribe's motion to dismiss

Stein's appeal under California's "disentitlement doctrine," which focuses on an appellant's

post-judgment obstructive tactics.  See In re Chinichian, 784 F.2d 1440, 1446 (9th Cir. 1986)

("the strategic timing of the bankruptcy petition and the nature of the plan itself supports a

finding that [debtors] failed to file their plan in good faith.").  (Dkt. No. 23, Exh. 4.)

Stein commenced this case solely to hinder, delay, and frustrate the Tribe's ability to

collect on the Judgment, rather than any good faith attempt to efficiently and practically

reorganize.  For this separate and sufficient reason, the Court should dismiss this case.

### c.    The Bankruptcy Case has no legitimate reorganizational purpose.

Pursuant to Sections 1129(a)(3) and 1129(a)(11), "[t]he court shall confirm a plan only

if all of the following requirements are met: . . . (3) The plan has been proposed in good faith

and not by any means forbidden by law. . .  (11) Confirmation of the plan is not likely to be

followed by the liquidation, or the need for further financial reorganization, of the debtor or

any successor to the debtor under the plan, unless such liquidation or reorganization is

proposed in the plan."

A plan is proposed in good faith if the totality of the circumstances of a particular

case establishes that the proposed plan achieves a result consistent with the purposes of the

Bankruptcy Code.  Platinum Capital, Inc. v. Sylmar Plaza, L.P. (In re Sylmar Plaza, L.P.), 314

F.3d 1070, 1074-5 (9th Cir. 2002).  Additionally, a plan satisfies the "feasibility" requirement

set forth in Section 1129(a)(11) only if it has a "reasonable probability of success."  First

Southern Nat'l Bank v. Sunnyslope Hous. Ltd. P'ship (In re Sunnyslope Hous. Ltd. P'ship),

859 F.3d 637, 646-47 (9th Circuit, 2017) (en banc) (quoting In re Acequia, Inc., 787 F.2d 1352,

1363 (9th Cir. 1986)).

**CREDITOR GABRIELINO-TONGVA TRIBE'S NOTICE OF MOTION AND MOTION TO DISMISS
BANKRUPTCY CASE OR, ALTERNATIVELY, TO CONVERT TO CHAPTER 7**

Here, Debtor has no ability to put forward a legitimate plan of reorganization. Debtor currently has no employment or business-related income.  Debtor's current monthly income is only $4,259.34, which mostly consists of retirement income, and is woefully insufficient to fund a plan of reorganization with over $30,000,000 in secured debt.  (Dkt. No. 17, p. 40.)  Debtor's Statement of Financial Affairs states that he earned only $21,200.00 in 2019 and $10,356.25 during 2020.  (Dkt. No. 17, p. 31.)  Notably, during his judgment debtor examination on July 24, 2020, Debtor testified that his law firm had not handled any legal matter on behalf of any client during the previous three months.  (PY Decl., Exh. A.)  Moreover, Stein recently completed the Employer's Return (under penalty of perjury) for an Earnings Withholding Order ("EWO"), claiming he earned no wages.  (PY Decl., Exh. B.)

Moreover, as set forth in Schedule I, Debtor's ability to make plan payments is solely dependent on him suddenly becoming employed and earning a hoped-for $16,660.00 per month from a prospective employer listed on the Schedules as "TBD."  Debtor's ability to obtain such employment would require any prospective employer to overlook his numerous adjudicated ethical lapses as well as his inconsistent employment history.

Additionally, any plan of reorganization would have to pay the secured portion of the Tribe's claim in full and allow for some payment of the unsecured portion.  The Tribe has a secured claim against Debtor's personal and real property, which is valued at $10,059,524.28 according to Schedule A/B, as a result of the ORAP lien and recording of the Judgment.  (RJN, Exhs. 6-14.)  The Tribe has an unsecured claim for the remainder of the claim, which is over $20,000,000.00.

Critically, given the nature of the Judgment, it is highly likely to be deemed nondischargeable pursuant to Section 523(a)(2), (4) and/or (6).  Of course, based on Debtor's "current monthly income" of $4,259.34, the secured portion of the Tribe's claim could not be paid in full during the plan.  Thus, both the secured and unsecured portions of the claim would require liquidation of assets or further reorganization, in contravention of Section 1129(a)(11).  See Elite of L.A., Inc. v. Hamilton (In re Hamilton), 803 Fed. Appx. 123, 125-26 (9th Cir. 2020) (unpublished and cited pursuant to Ninth Circuit FRAP 32.1) (holding that where there

1  was no evidence that debtor would be able to pay a non nondischargeable judgment during the

2  plan term or thereafter, the plan was not proposed in good faith pursuant to Section 1129(a)(3)

3  and was not feasible within the meaning of Section 1129(a)(11)).  Accordingly, no plan

4  proposed by Debtor will comply with Sections 1129(a)(3) or (11).  Therefore, this bankruptcy

5  was not filed for a legitimate reorganizational purpose and should be dismissed.

6          **d.**      **Debtor dissipated substantial assets prior to commencing the**

7                      **Bankruptcy Case, including multiple transfers to his wife.**

8        "[I]t has long been held that Courts may take pre-petition conduct into account,"

9  including conduct involving mismanagement of the estate.  In re 10 Bears at Chiloquin, Inc.,

10  2007 Bankr. LEXIS 1997 (Bankr. D. Or. June 6, 2007) (citing Marrama v. Citizens Bank of

11  Massachusetts, 549 U.S. 365, 373 (2007) ("Bankruptcy courts nevertheless routinely treat

12  dismissal for prepetition bad-faith conduct as implicitly authorized by the words 'for cause.'")

13        As discussed above, during the Underlying Action and through the commencement of

14  this Bankruptcy Case, Debtor engaged in numerous transactions to deplete the value of the

15  estate, including but not limited to several fraudulent transfers of his assets to his wife and his

16  Professional Corporation.  (Dkt. No. 23, Exh. 28; RJN, Exhs. 3–5.)  These transactions

17  demonstrate bad faith conduct in the dissipation and gross mismanagement of the estate's

18  assets shortly before filing bankruptcy.  See 10 Bears at Chiloquin, 2007 Bankr. LEXIS 1997

19  (finding sufficient evidence of "cause" under Section 1112(b) for bad faith conduct where

20  debtor engaged in gross mismanagement of debtor's affairs prepetition, including "improper

21  loans to insiders who do not appear to have the means of the inclination to repay the loans.").

22        With respect to the Tribe's pending intervention claims in the Iowa Federal Action, it is

23  an understatement that Stein will not be motivated to pursue such claims against himself, his

24  wife, and other insiders.  In fact, the filing of this Bankruptcy Action was Stein's last resort to

25  block the Tribe from finally being able to obtain partial satisfaction of the Judgment.  As

26  detailed above, Stein's prior tactics to block those claims included unsuccessfully moving to

27  dismiss the Tribe's intervention complaint, unsuccessfully moving for leave to appeal the order

28  denying his motion to dismiss, unsuccessfully moving to delay/defer any ruling on the Tribe's

**CREDITOR GABRIELINO-TONGVA TRIBE'S NOTICE OF MOTION AND MOTION TO DISMISS
BANKRUPTCY CASE OR, ALTERNATIVELY, TO CONVERT TO CHAPTER 7**

1   motion for summary judgment to allow himself to conduct discovery on his own fraudulent

2   transfers, and filing over a dozen motions for extensions of deadlines along the way. (Dkt. No.

3   23, Exhs. 32, 41.)  Faced with the prospect of losing on the Tribe's motion for summary

4   judgment, Stein filed this Bankruptcy Action at the eleventh hour to divest the Tribe of a

5   collectible claim.  After filing this Bankruptcy Action, Stein has proudly informed Chief

6   District Judge Jarvey and Chief Magistrate Judge Adams of the Southern District of Iowa that

7   Stein now owns the Tribe's claims as the debtor in possession.  (RJN, Exh. 16.)

8       Finally, Stein's schedules show his clear intent to further deplete the assets of the estate

9   through more frivolous litigation, including but not limited to an action against the Tribe which

10  was to be filed on November 30, 2021, and at least four malpractice actions against attorneys

11  who have represented him in his numerous unsuccessful attempts to evade enforcement of the

12  Tribe's Judgment.

13          **e.       Debtor is using cash collateral without this Court's authorization to**

14                   **the substantial deteriment of the Tribe.**

15      Under Section 1112(b)(4)(D), the term "cause" includes unauthorized use of cash

16  collateral substantially harmful to one or more creditors.  See In re Premier Golf Properties, LP,

17  564 B.R. 710, 719 (Bankr S.D. Cal. 2016).  Section 363(a) defines "cash collateral" as "cash,

18  negotiable instruments, documents of title, securities, deposit accounts, or other cash

19  equivalents whenever acquired in which the estate and an entity other than the estate have an

20  interest and includes the proceeds, products, offspring, rents, or profits of property and the fees,

21  charges, accounts or other payments for the use or occupancy of rooms and other public

22  facilities in hotels, motels, or other lodging properties subject to a security interest as provided

23  in section 552(b) of this title, whether existing before or after the commencement of a case

24  under this title." 11 U.S.C. § 363(a).

25      Additionally, Section 363(c)(2) prohibits a debtor in possession from using cash

26  collateral without either: (1) the consent of each creditor with an interest in the collateral, or

27  (2) court authorization, granted after notice and a hearing.  See In re Safeguard Self–Storage

28  Trust, 2 F.3d 967, 969 (9th Cir. 1993); In re Scottsdale Med. Pavilion, 159 B.R. 295, 297 (9th

1  Cir. B.A.P 1993), aff'd, 52 F.3d 244 (9th Cir. 1995). Upon a secured creditor's request, the

2  court must "prohibit or condition" debtor's use of cash collateral as necessary to provide

3  adequate protection of the secured creditor's security interest in the collateral.  11 U.S.C. §

4  363(e).

5       Here, as a result of the ORAP lien, the Tribe has a lien over Debtor's personal property,

6  including his cash collateral.  See Kipperman v. Proulx (In re Burns), 291 B.R. 846 (B.A.P. 9th

7  Cir. Feb. 3, 2003) (judgment creditor's service on the debtor of an ORAP created an

8  enforceable lien on the debtor's nonexempt personal property under CCP § 708.110(d)).

9  However, even though this Bankruptcy Case is over a month old, Debtor has not filed a motion

10 to use cash collateral.  It is clear that Debtor has, at the very least, used cash collateral to pay

11 the excessive $75,000 retainer, which has been reduced to $58,422 without Court authority,

12 and his monthly expenses set forth in Schedule J.

13      As Debtor has not paid anything toward the Tribe's Judgment, Debtor's use of cash

14 collateral – for this frivolous Bankruptcy Case, the frivolous lawsuits Debtor intends on

15 pursuing, and whatever else Debtor is spending it on – is substantially harmful to the Tribe.

16 Further, Debtor's failure to file employment applications for his counsel in the Iowa Federal

17 Action and his appeal in California is further evidence of mismanagement and represents a

18 disregard of his obligations as a debtor-in-possession.  Therefore, "cause" exists for dismissal

19 based on Debtor's unauthorized use of the Tribe's cash collateral and his continuing breaches

20 of his duties as a debtor-in-possession.  See Cothran v. United States, 45 B.R. 836, 838 (S.D.

21 Ga 1984) (dismissing Chapter 11 case for unauthorized use of cash collateral).

22      **f.      Debtor has failed to satisfy his reporting requirements.**

23      Pursuant to Section 1112(b)(4)(F), "cause" exists when a debtor fails to satisfy filing or

24 reporting requirements.  As with a trustee, a debtor-in-possession owes a fiduciary duty to its

25 creditors.  In re McConville, 110 F.3d 47, 50 (9th Cir. 1997).  In that regard, the bankruptcy

26 rules provide that debtors-in-possession have the same filing and reporting requirements as

27 trustees.  Specifically, Local Rule 2015-2(b) provides:

28

**CREDITOR GABRIELINO-TONGVA TRIBE'S NOTICE OF MOTION AND MOTION TO DISMISS
BANKRUPTCY CASE OR, ALTERNATIVELY, TO CONVERT TO CHAPTER 7**

(1) The debtor in possession, chapter 11 trustee, or subchapter V trustee in possession, must file with the Court a copy of each monthly operating report submitted to the United States trustee from the date the chapter 11 case is commenced until the date a plan is confirmed or the case is dismissed or converted to another chapter under title 11.

(2) Each monthly operating report must be filed on the date that such documents are submitted to the United States trustee, but not later than the 15th day of the month following expiration of the month which is the subject of the report.

Further, Federal Rules of Bankruptcy Procedure, Rule 2015.3 states, in pertinent part:

(a) Reporting requirement.  In a chapter 11 case, the trustee or debtor in possession shall file periodic financial reports of the value, operations, and profitability of each entity that is not a publicly traded corporation or a debtor in a case under title 11, and in which the estate holds a substantial or controlling interest.  The reports shall be prepared as prescribed by the appropriate Official Form, and shall be based upon the most recent information reasonably available to the trustee or debtor in possession.

(b) Time for filing; service.  The first report required by this rule shall be filed no later than seven days before the first date set for the meeting of creditors under § 341 of the Code.  Subsequent reports shall be filed no less frequently than every six months thereafter, until the effective date of a plan or the case is dismissed or converted. Copies of the report shall be served on the United States trustee, any committee appointed under § 1102 of the Code, and any other party in interest that has filed a request therefor.

(c) Presumption of substantial or controlling interest; judicial determination.  For purposes of this rule, an entity of which the estate controls or owns at least a 20 percent interest, shall be presumed to be an entity in which the estate has a substantial or controlling interest . . . .

As this Bankruptcy Case was filed on November 8, 2021, Debtor was required to file his first Monthly Operating Report on December 15, 2021.  However, Debtor has still not filed the report.  Moreover, as Debtor has a 100% interest in the Professional Corporation and SMDC (Schedule A/B, No. 19), he was required to file Official Form 426 for each of the entities by December 2, 2021, seven days before the meeting of creditors which was conducted on December 9, 2021.  Therefore, cause exists for dismissal based on Debtor's failure to

CREDITOR GABRIELINO-TONGVA TRIBE'S NOTICE OF MOTION AND MOTION TO DISMISS
BANKRUPTCY CASE OR, ALTERNATIVELY, TO CONVERT TO CHAPTER 7

comply with his fiduciary obligations as a debtor-in-possession.

For all of the above reasons, the Tribe requests the Court dismiss this Bankruptcy Case with an eighteen-month bar on refiling.

**B.    Alternatively, the Court should convert this Bankruptcy Case to Chapter 7.**

As discussed, dismissal is in the best interest of the creditors and the estate. The Tribe is Debtor's only meaningful creditor, and the amount it is owed far exceeds any of Debtor's other purported debts, including his mortgage. Accordingly, conversion (as opposed to dismissal) would meaningfully impact only the Tribe and would add an additional layer of Chapter 7 administrative fees and costs to marshal and liquidate the Debtor's assets, primarily to distribute them to the Tribe. The better course is to dismiss the case, so the Tribe can continue to enforce its Judgment on its own.

However, if the Court declines to dismiss the case, then the Tribe alternatively requests the Court convert the case to Chapter 7. See 11 U.S.C. § 1112(b) (mandating either dismissal or conversion once cause is established); see also Nelson v. Meyer (In re Nelson), 343 B.R. 671, 675 (9th Cir. B.A/P 2006) (once it is determined that cause exists, the Court must choose between dismissal and conversion, depending on what is in the best interests of the creditors).

**IV.    CONCLUSION**

Debtor should not be permitted to abuse the protections rightfully reserved for honest bankruptcy filers, to further harass and delay the Tribe from obtaining long-overdue compensation for abuses Debtor intentionally committed. For the foregoing reasons, the Tribe respectfully requests that the Court grant this Motion and dismiss this Bankruptcy Case with an eighteen-month bar on refiling. Alternatively, the Tribe requests that the Court convert this Bankruptcy Case to Chapter 7.

Dated: December 17, 2021                 **CHORA YOUNG & MANASSERIAN LLP**

                                         By: /s/ Paul Young
                                         Paul Young
                                         Attorneys for Creditor
                                         Gabrielino-Tongva Tribe

**CREDITOR GABRIELINO-TONGVA TRIBE'S NOTICE OF MOTION AND MOTION TO DISMISS
BANKRUPTCY CASE OR, ALTERNATIVELY, TO CONVERT TO CHAPTER 7**

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

650 Sierra Madre Villa Ave., Ste. 304, Pasadena, CA 91107

A true and correct copy of the foregoing document entitled (*specify*): Creditor Gabrielino-Tongva Tribe's Notice of Motion and Motion to Dismiss Bankruptcy Case, or Alternatively, to Convert to Chapter 7, Pursuant to 11 U.S.C. § 1112 Declaration of Paul P. Young in Support of Motion to Dismiss Bankruptcy Case, or Alternatively, to Convert to Chapter 7, Pursuant to 11 U.S.C. § 1112.
will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 12/17/2021_____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

M. Jonathan Hayes: jhayes@rhmfirm.com; Jonathan Stein: jsteinlaw.com; Greg Campbell: ch11ecf@aldridgepite.com; Brian D Fittipaldi: brian.fittipaldi@usdoj.gov; Arvind Nath Rawal: arawal@aisinfo.com; Jennifer C Wong: bknotice@mccarthyholthus.com; Glenn Golden: reed@olmstead.law; Jeffrey S. Kwong: jsk@lnbyg.com

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 12/17/2021 | Jennifer Housholder | /s/ Jennifer Housholder |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.